WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
(212) 382-3300
Paul R. DeFilippo

Attorneys for Greenwich Sentry, L.P.
and Greenwich Sentry Partners, L.P.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>GREENWICH SENTRY, L.P. and<br>GREENWICH SENTRY PARTNERS, L.P.,<br><br>Debtors and Debtors-in-Possession. | Case No: 10-16229 (BRL)<br><br>Chapter 11<br><br>(Jointly Administered)[1]<br><br>Hearing Date: June 21, 2011 at 10:00 a.m.<br>Objection Deadline: June 14, 2011 |

**MOTION FOR ENTRY OF AN ORDER APPROVING SETTLEMENTS BETWEEN
THE DEBTORS AND THE BLMIS TRUSTEE**

TO:   THE HONORABLE BURTON R. LIFLAND
      UNITED STATES BANKRUPTCY JUDGE

Greenwich Sentry, L.P. ("GS") and Greenwich Sentry Partners, L.P. ("GSP"), debtors and debtors-in-possession (sometimes collectively the "Debtors"), by and through their undersigned counsel, submit this motion (the "Motion") seeking entry of an order (the "Approval Order") approving agreements between each of the Debtors and Irving H. Picard (the "BLMIS Trustee"), in his capacity as trustee for the liquidation under the Securities Investor Protection Act of 1970, as amended, of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated Chapter 7 case pending before the United States Bankruptcy Court for

---

[1] Pursuant to the Order Granting the Debtors' Motion for an Order Directing Joint Administration of Related Chapter 11 Cases Pursuant to Fed. R. Bankr. P. 1015 [Docket No. 14], the Chapter 11 proceeding of Greenwich Sentry Partners, L.P., Case No.: 10-16230 (BRL), is to be jointly administered under the above-captioned matter.

the Southern District of New York of Bernard L. Madoff ("Madoff"), and in support thereof, the Debtors respectfully represent as follows:

1. On November 19, 2010 (the "Petition Date"), the Debtors filed with the Clerk of the Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors operate their businesses and manage their property pursuant to sections 1107(a) and 1108 of the Bankruptcy Code as debtors-in-possession.

I. **The Debtors' Operations and the Madoff Ponzi Scheme**

2. GS was organized as a Delaware limited partnership on December 27, 1990 under the name "Aspen/Greenwich Limited Partnership." GS qualified to do business in New York on January 1, 1991. GS's name was changed to "Greenwich Sentry, L.P." on December 4, 1992, and it commenced operations in January 1993. GSP was organized as a Delaware limited partnership on April 5, 2006, and qualified to do business in New York on May 11, 2006. GSP commenced operations in May 2006.

3. The Debtors operate as private investment partnerships. They privately offered limited partnership interests to potential investors through a Confidential Offering Memorandum. Interests generally were sold only to "accredited investors" under Regulation D of the Securities Act of 1933, as amended. Capital contributions for interests were accepted as of the beginning of any month and, at the end of each month, a limited partner could withdraw all or part of its capital account upon fifteen (15) days' prior written notice. The net proceeds from the offering of the interests were invested pursuant to the Debtors' investment program.

4. The Debtors' investment objective was to seek to obtain capital appreciation of assets principally through the utilization of a nontraditional options trading strategy described as "split strike conversion," to which the Debtors allocated the predominant portion of their assets.

The split strike conversion strategy was implemented by BLMIS, a broker-dealer registered with the Securities and Exchange Commission, through customer accounts maintained by the Debtors at BLMIS.

5. On December 11, 2008, Madoff – the principal of BLMIS – was arrested and charged with securities fraud for operating a giant Ponzi scheme. Also on December 11, 2008 (the "BLMIS Filing Date"), the Securities and Exchange Commission filed a complaint against BLMIS and Madoff in the United States District Court for the Southern District of New York. After Madoff's arrest, the Debtors suspended taking contributions and making payments with respect to requested withdrawals.

## II.    THE BLMIS Trustee Is Appointed; GS and GSP Are "Net Losers"

6. On December 15, 2008, the BLMIS Trustee was appointed as trustee to oversee the liquidation of BLMIS under the Securities Investor Protection Act.

7. In March 2009, GS filed a customer claim with the BLMIS Trustee for approximately $314 million, the amount shown on the last account statements and purchase/sale confirmations that GS received from BLMIS. In March 2009, GSP filed a customer claim with the BLMIS Trustee for approximately $10 million, the amount shown on the last account statements and purchase/sale confirmations that GSP received from BLMIS.

8. GS and GSP are each a "net contributor" to BLMIS, *i.e.*, they each invested more into BLMIS than they withdrew. On an overall basis, GS deposited into its BLMIS account a total of One Hundred Forty Million Four Hundred Thirty Nine Thousand One Hundred Forty Six Dollars ($140,439,146) in excess of the amount of withdrawals that GS made from the account. GS withdrew Twenty Three Million Dollars ($23,000,000) from its BLMIS account within ninety days before the BLMIS Filing Date and an additional One Hundred Eighty Three Million

Thirty Eight Thousand Six Hundred Fifty Four Dollars ($183,038,654) from its BLMIS account during the period more than 90 days, but less than six years, before the BLMIS Filing Date. On an overall basis, GSP deposited into its BLMIS account a total of Two Million Five Hundred Forty Thousand Dollars ($2,540,000) in excess of the amount of withdrawals that GSP made from the account. GSP withdrew Five Million Nine Hundred Eighty-Five Thousand Dollars ($5,985,000) during the period less than six years before the BLMIS Filing Date.

### III.     The BLMIS Trustee Adversary Proceeding

9.     On May 18, 2009, the BLMIS Trustee commenced an avoidance action against the Debtors and Fairfield Sentry Limited, *Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC v. Fairfield Sentry Limited, et al.*, Adv. Pro. No. 09-1239 (BRL) (Bankr. S.D.N.Y.).

10.     On July 20, 2010, the BLMIS Trustee amended its complaint to add additional defendants to the avoidance action, including the General Partner and certain affiliates of the Debtors and the General Partner. The Trustee's amended complaint asserts avoidance claims against the defendants under the Bankruptcy Code and State law. Specifically, the BLMIS Trustee asserts claims against GS in the total amount of $206 million, of which $23 million represents claims to avoid preferential transfers from the BLMIS estate to GS, and the balance represents claims for fraudulent transfers. The BLMIS Trustee asserts claims against GSP in the total amount of $5,985,000, representing redemptions outside the preference period. The BLMIS Trustee has also objected to the allowance of the customer claims of both GS and GSP.

11.     The Debtors and the BLMIS Trustee have negotiated a comprehensive resolution of the BLMIS Trustee's claims against the Debtors, which is set forth in the Agreements attached hereto as Exhibits A (the "GS Settlement Agreement") and B (the "GSP Settlement Agreement",

4

together with the GS Settlement Agreement, each a "Settlement Agreement" and collectively, the "Settlement Agreements"). The Settlement Agreements have substantially similar operative terms, with the exception of the numbers involved. Negotiation of the Settlement Agreements involved representatives of several of the limited partners in the Debtors, and the Debtors have been informed that holders of not less than $60 million in limited partner interests in GS favor the Court's approval of the Settlement Agreements.

### IV. The Settlement Agreements

12. The following is a description of the material terms of the Settlement Agreements (which is qualified in its entirety by reference to the terms of the Settlement Agreements themselves):[2]

    a. The BLMIS Trustee will be allowed claims against the Debtors in the amount of $206,038,654 for GS and $5,985,000 for GSP, respectively (together, the "BLMIS Trustee's Allowed Claims"), which shall be memorialized by judgments that confirm the avoidance of the transfers from BLMIS to the Debtors. The BLMIS Trustee's Allowed Claims shall be treated as set forth under plans of reorganization that both Debtors intend to file promptly. Except for the interests in the property to be conveyed, assigned to, or shared with the BLMIS Trustee under the Settlement Agreements, the BLMIS Trustee shall not have any right to be paid from the Retained Assets in the Debtors' estates.

    b. The Debtors shall assign all of their claims against their general partners, former investment managers, investment advisors (excluding the Service Providers), managing entities, directors, alleged partners, partners, employees and officers, their relative and affiliates ("Claims Against Management") to the BLMIS Trustee, and all persons other than the BLMIS Trustee shall be barred from prosecuting Claims Against Management.

    c. The Debtors shall retain the first $50 million in recoveries from Service Provider Claims, and shall pay to the BLMIS Trustee 20% of Net Recoveries from Service Provider Claims in excess of $50 million up to a

---

[2] Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the respective Settlement Agreements. Also, to the extent of any inconsistency between the description of the material terms of the Settlement Agreements in this Motion and any provision of the Settlement Agreements, the Settlement Agreements shall control.

5

     cap, after which the Debtors shall retain 100% of the Net Recoveries from Service Provider Claims.

  d. The BLMIS Trustee has agreed to pay the Debtors 20% of amounts recovered by the BLMIS Trustee from subsequent transferees of property initially transferred from BLMIS to the Debtors ("Subsequent Transferee Claims") up to a cap, after which the Debtors shall be paid 100% of the amounts recovered from Subsequent Transferee Claims.

  e. The Debtors shall assign to the BLMIS Trustee any state common law or statutory claims against persons who redeemed funds from the Debtors ("Redeemer Claims"), and shall retain all of the estate's rights and claims under Chapter 5 of the Bankruptcy Code against such redeemers who are not members of Management.

  f. The Debtors are to be granted allowed customer claims against the BLMIS estate in the amounts of $35 million for GS and $2,011,304 for GSP, respectively. The Debtors shall be entitled to the benefits of any SIPC advances with respect to such claims, and there is a provision for the amounts of such claims to increase depending on the results of the appeal from this Court's net equity decision.

  g. The Plan shall provide that certain members of Management holding the claims and interests in the Debtors identified in Section 10 of the Settlement Agreements shall not receive or retain anything of value on account of those claims and interests, except for rights of set-off or counterclaim on Claims Against Management, which should facilitate maximizing the recoveries of the holders of allowed limited partner interests.

13. The Debtors believe that the Settlement Agreements provide the greatest chance for the holders of allowed claims against and interests in the Debtors to obtain the largest recoveries on account of their interests. The Debtors' customer claims in the BLMIS case are their most substantial tangible assets by far and, absent the consensual allowance of those claims, the BLMIS Trustee will continue to maintain that those claims may not be allowed until the Debtors either repay the allegedly avoidable transfers they received or prevail in the BLMIS Trustee's action to recover those allegedly voidable transfers. As noted, $23 million of the BLMIS Trustee's claims against GS are based on the receipt of alleged preferences and GS has

concluded that its defenses to the preference claims against it are limited. While the Debtors believe they have defenses to the avoidance of the alleged fraudulent transfers, including that they took the redemptions for value and in good faith, several factors have led the Debtors to conclude that the Settlement Agreements are in the best interests of their estates, and are far preferable to litigating the allowance of the BLMIS Trustee's claims. The Debtors' customer claims will remain subject to disallowance unless they defeat the avoidance actions brought against them. Defense of the BLMIS Trustee's avoidance actions would be time consuming and expensive, and would likely exceed the Debtors' available resources. The BLMIS Trustee's avoidance actions would be brought against the backdrop of applicable law that would be argued to favor many of the positions advanced by the BLMIS Trustee. Under the Settlement Agreements, both Debtors are retaining valuable assets, including part of their customer claims, some of their causes of action and their cash on hand, free of the BLMIS Trustee's claims, which they intend to devote to payment of the Allowed Claims and Allowed Interests of their creditors other than the BLMIS Trustee, and their limited partners. Absent the very substantial concession by the BLMIS Trustee to forego payment on its allowed claims from Retained Assets, there would be very little likelihood of a recovery by the Debtors' limited partners from either of the Debtors' estates.

14. The Debtors began negotiating with the BLMIS Trustee in late 2010. The negotiations have been hard fought and the parties have advanced their respective positions aggressively and in good faith. The Settlement Agreements represent the best result that the Debtors could achieve for their constituents under the facts presented. The Debtors have no hesitancy in recommending that the Court approve the Settlement Agreements.

15. Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Courts have held that in order to approve a settlement or compromise under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise proposed is fair and equitable, reasonable, and in the best interests of a debtor's estate. *In re Ionosphere Clubs, Inc.*, 156 BR 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (citing *Protective Comm. for Index. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968)). The Second Circuit has stated that a bankruptcy court, in determining whether to approve a compromise, should not decide the numerous questions of law and fact raised by the compromise, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Liu v. Silverman* (*In re Liu*), 1998 U.S. App. LEXIS 31698, at *3 (2d Cir. Dec. 18, 1998) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *see also Masonic Hall & Asylum Fund v. Official Comm. Of Unsecured Creditors (In re Refco, Inc.)*, 2006 U.S. Dist. LEXIS 85691, at *21-22 (S.D.N.Y. Nov. 16, 2006); *In re Ionosphere Clubs*, 156 B.R. at 426; *In re Purified Down Prods. Corp.,* 150 B.R. 519, 522 (S.D.N.Y. 1993) ("[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying litigation"); *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y 1991).

16. In deciding whether a particular compromise falls within the "range of reasonableness," courts consider the following factors:

- the probability of success in the litigation;
- the difficulties associated with collection;
- the complexity of the litigation, and the attendant expense, inconvenience, and delay; and

- the paramount interests of the creditors.

*In re Refco, Inc.*, 2006 U.S. Dist. LEXIS 85691, at *22; *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994) (citing *In re Drexel Burnham Lambert Group, Inc*., 960 F.2d 285, 292 (2d Cir. 1992), *cert. denied*, 506 U.S. 1088 (1993)).

17. The bankruptcy court may credit and consider the opinions of the trustee or debtor and their counsel in determining whether a settlement is fair and equitable. *See In re Purified Down Prods.*, 150 B.R. at 522; *In re Drexel Burnham Lambert Group, Inc.,* 134 B.R. at 505. The competency and experience of counsel supporting the settlement may also be considered. *Nellis*, 165 B.R. at 122. Finally, the court should be mindful of the principle that "the law favors compromise." *In re Drexel Burnham Lambert Group, Inc*., 134 B.R. at 505 (quoting *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976)).

18. As noted above, the BLMIS Trustee's preference claims are strong, and the BLMIS Trustee would argue that his other claims are strong as well. Mounting an effective defense of the BLMIS Trustee's claims through trial would take years and would likely consume substantially all of the assets in the Debtors' estates, with no assurance that such defense would be successful (and, indeed, at least with respect to the preference claims, a fair probability that such defense would be unavailing.) Absent settlement, the Debtors do not believe they could obtain allowance of their customer claims against the BLMIS estate, and those allowed claims have substantial value based both on the BLMIS Trustee's estimates of the size of the fund of customer property to be available to distribute on allowed customer claims, and on indicative trading prices for BLMIS customer claims in the secondary market. The allowed customer claims are the assets with the most substantial tangible value to creditors and limited partners, and the Debtors believe that it is better to harvest those values by way of this settlement rather

than to risk those values through litigation. The proposed settlement leaves the Debtors with other potentially valuable assets as well, including substantial shares in the Service Provider Claims, avoidance actions against redeemers (under Chapter 5 of the Bankruptcy Code), and shares in the BLMIS Trustee's prosecution of the Subsequent Transferee Claims. The consummation of the settlements, if approved, will be accomplished pursuant to plans of reorganization which the Debtors are prepared to file expeditiously, and the BLMIS Trustee has agreed to support and vote his claim in favor of such plans. The Debtors believe that a substantial amount of their limited partner interests also favor settlements on these terms, as providing the clearest path to some recovery for those investors who were also harmed by the Madoff fraud.

Wherefore, for the foregoing reasons, the Debtors respectfully request that the Court approve the Settlement Agreements with the BLMIS Trustee, and grant such other and further relief as may be just.

New York, New York
May 18, 2011

    Respectfully submitted,

    /s/ Paul R. De Filippo
    Paul R. DeFilippo
    James N. Lawlor
    WOLLMUTH MAHER & DEUTSCH LLP
    500 Fifth Avenue
    New York, New York 10110
    Telephone: (212) 382-3300
    Facsimile: (212) 382-0050