UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: | CASE NO. 10-16229 |
| GREENWICH SENTRY, L.P. | CHAPTER 11 |
| DEBTOR. | |

## DEBTOR'S PLAN OF REORGANIZATION UNDER CHAPTER 11
### OF THE BANKRUPTCY CODE

WOLLMUTH MAHER & DEUTSCH LLP
500 FIFTH AVENUE
NEW YORK, NEW YORK 10110
Attorneys for Debtor and
Debtor-in-Possession

Dated:  July 20, 2011
        New York, New York

**TABLE OF CONTENTS**

PAGE(S)

ARTICLE 1
DEFINITONS .................................................................................................................1

ARTICLE 2
ADMINISTRATIVE AND PRIORITY TAX CLAIMS ...................................................8

ARTICLE 3
CLASSIFICATION OF CLAIMS AND INTERESTS .....................................................9

ARTICLE 4
TREATMENT OF CLASSES UNDER THE PLAN ......................................................10

ARTICLE 5
ACCEPTANCE OR REJECTION OF THE PLAN ........................................................11

ARTICLE 6
MEANS FOR IMPLEMENTATION OF THE PLAN....................................................11

ARTICLE 7
CONDITIONS PRECEDENT ........................................................................................13

ARTICLE 8
DISTRIBUTIONS UNDER THE PLAN .......................................................................13

ARTICLE 9
EXECUTORY CONTRACTS.........................................................................................16

ARTICLE 10
EFFECTS OF PLAN UPON CONFIRMATION...........................................................16

ARTICLE 11
MISCELLANEOUS PROVISIONS...............................................................................19

Greenwich Sentry, L.P., debtor and debtor-in-possession (the "Debtor") hereby proposes the following Plan of Reorganization pursuant to section 1121(a) of the Bankruptcy Code.

# ARTICLE 1

## DEFINITIONS

As used in the Plan, the following terms shall have the respective meanings specified below (such meanings to be equally applicable to the singular and plural, and the masculine, feminine and neuter forms of the terms defined):

**Administrative Expense Claim** means a Claim for payment of any costs or expenses of administration of the Case incurred after the commencement of the Case allowable under sections 503(b) or 507(a)(1) of the Bankruptcy Code, including, without limitation: (a) the actual and necessary expenses of preserving the estate of the Debtor; (b) the actual and necessary expenses of operating the business of the Debtor (such as wages, salaries or commissions for services rendered, or severance, bonuses or other amounts due and payable to employees of the Debtor pursuant to any Court order); (c) indebtedness or obligations incurred or assumed by the Debtor in connection with the conduct of its business, the acquisition or lease of property, or the rendition of services to the Debtor; (d) allowances of compensation for legal and other services and reimbursement of expenses awarded pursuant to sections 330(a), 331 and 503(b) of the Bankruptcy Code; (e) any amounts necessary to cure defaults under assumed leases pursuant to section 365(b)(l)(A) of the Bankruptcy Code; (f) all fees or charges assessed against the estate of the Debtor under section 1930, title 28, United States Code; provided, however, that an Exempt Tax shall not be an Administrative Claim, and (g) Allowed 503(b)(9) Claims.

**Administrative Expense Claim Bar Date** means the last date by which all proofs of claim for allowance of Administrative Expenses shall be Filed.

**Adversary Proceeding** means the action pending in the Bankruptcy Court under the caption *Picard v. Fairfield Sentry Ltd. et al.*, Adv. Pro. No. 09-01239 (BRL).

**Adversary Proceeding Claims** means all claims and causes of action for damages or other relief that the BLMIS Trustee has asserted in the Adversary Proceeding against the Debtor's General Partner, former investment managers, investment advisors (excluding the Service Providers), managing entities, directors, alleged partners, and officers, including but not limited to entities denominated the "Fairfield Greenwich Group", Fairfield Greenwich (Bermuda) Limited, Fairfield Greenwich Advisors, LLC, Fairfield Risk Services Limited, Fairfield Greenwich Limited, Fairfield International Managers, Inc., Walter M. Noel, Jr., Jeffrey Tucker, and all other individual persons named as defendants in the Adversary Proceeding.

**Affiliate** means a Person controlled by, controlling, or under common control with, any other Person.

**Allowed** when used as an adjective preceding the words "Claim" or "Interest" or when used as an adjective preceding an amount of a Claim or Interest or the name of a category of Holders of Claims or Interests set forth in the Plan means any Claim against or Interest in the Debtor: (a) proof or application for allowance of which was (i) Filed on or before the Bar Date or such other date as fixed in this Plan, or otherwise fixed by the Bankruptcy Court, (ii) Filed after

the Bar Date or such other date fixed in this Plan or by the Bankruptcy Court, if Filed with Bankruptcy Court leave after notice and a hearing, or (iii) if no Proof of Claim or Proof of Interest or application for allowance was Filed, which Claim or Interest has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent; and (b) which (i) is due and payable and as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or the Bankruptcy Court or (ii) as to which any objection has been determined by Final Order of the Bankruptcy Court to the extent such objection has been resolved in favor of the Holder of such Claim or Interest.

**Assigned Management Claims** shall have the meaning set forth in the BLMIS Trustee Settlement Agreement.

**Avoidance Actions** means any and all claims, causes of action, rights and remedies accruing to the Debtor and the Estate pursuant to sections 544(b), 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code, which have not been released as of the Effective Date.

**Ballots** means the ballots accompanying the Disclosure Statement and the Plan upon which impaired Creditors and Interest Holders shall have indicated their acceptance or rejection of the Plan.

**Bankruptcy Code** means the Bankruptcy Reform Act of 1978, as amended, and as codified in title 11 of the United States Code.

**Bankruptcy Court** or **Court** means the United States Bankruptcy Court for the Southern District of New York or any court having competent jurisdiction to hear appeals or certiorari proceedings therefrom, or any successor thereto that may be established by act of Congress or otherwise, or any court that has competent jurisdiction over the Case.

**Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended from time to time, and any Local Rules of the Bankruptcy Court, as applicable to the Case.

**Bar Date** is the last date for Filing Claims as may be fixed by the Court.

**BLMIS** means Bernard L. Madoff Investment Securities, LLC, the debtor in the SIPA Proceeding.

**BLMIS Trustee** means the duly qualified and acting trustee for the substantively consolidated estates of Bernard L. Madoff Investment Securities, Inc. and Bernard L. Madoff, pending in the Bankruptcy Court as Case No. 08-01789.

**BLMIS Trustee Claim** means any Claim of the BLMIS Trustee against the Debtor's Estate.

**BLMIS Trustee Settlement** means the transactions contemplated by the BLMIS Trustee Settlement Agreement.

**BLMIS Trustee Settlement Agreement** means the Agreement between the Debtor and the BLMIS Trustee dated as of July 7, 2011 .

**Business Day** means any day except Saturday, Sunday or a "legal holiday," as such term is defined in Bankruptcy Rule 9006(a).

**Case** means the Debtor's case under chapter 11 of the Bankruptcy Code, which case was commenced by the filing of a voluntary petition by the Debtor on the Petition Date.

**Cash** means: (a) with respect to payments under the Plan, lawful currency of the United States of America (U.S. dollars), regular check, certified check, bank check or wire transfer from a domestic bank; and (b) for all other purposes, lawful currency of the United States of America (U.S. dollars).

**Causes of Action** means all legal and equitable claims, demands, or causes of action held by the Debtor against any entity.

**Claim** means a "claim" within the meaning of section 101(5) of the Bankruptcy Code.

**Claimant** means the holder of a Claim.

**Claims Against Management** means the Adversary Proceeding Claims and the Assigned Management Claims.

**Class** means a category of Holders of Claims or Interests set forth in the Plan.

**Confirmation Date** means the date the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

**Confirmation Hearing** means the hearing before the Bankruptcy Court to consider confirmation of the Plan.

**Confirmation Order** means an order of the Bankruptcy Court confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**Creditor** means any Entity that has a Claim against the Debtor that arose on or before the Petition Date or a Claim against the Estate of any kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code.

**Derivative Action** means the action entitled Ferber v. Fairfield Greenwich Group et al., Index No. 600469/2009 (N.Y. Sup. Ct. 2009) in which the Debtor is a nominal defendant.

**Disbursing Agent** means the Debtor with respect to all distributions under the Plan to be made on the Effective Date, and thereafter means either the Liquidating Trustee or Litigation Trustee, as applicable.

**Disclosure Statement** means the written disclosure statement and its appendices, as they may be amended, supplemented or further modified from time to time, filed by Debtor, with respect to the Plan.

**Disputed Claim** means a Claim that is not an Allowed Claim.

**Disputed Claims Reserve** means, in the event there are Disputed Claims on or after the Effective Date, property to be set aside in amounts sufficient to pay all such Disputed Claims in accordance with the provisions of this Plan, if such Disputed Claims become Allowed Claims.

**Disputed Interest** means a Limited Partner Interest that is not an Allowed Limited Partner Interest.

**Distribution** means Cash that is required under the Plan to be distributed to the holders of Allowed Claims.

**Effective Date** means a Business Day determined by the Debtor in consultation with the BLMIS Trustee, and upon which (a) no stay of the Confirmation Order is in effect and (b) the conditions to the Effective Date set forth in the Plan have been satisfied or waived. The Debtor shall File a notice of the Effective Date within ten (10) days after its occurrence.

**Estate** means the estate created upon the commencement of the Case as to the Debtor by section 541 of the Bankruptcy Code.

**Exempt Tax** means any stamp, recording or similar tax or charge (including any penalties, interest or additions thereto) within the meaning of section 1146(c) of the Bankruptcy Code which may be imposed by the laws of any state upon the transactions contemplated under, or necessary for the success of, the Plan, including without limitation, any mortgage recording, securities transfer, deed transfer, documentary transfer or gains taxes.

**Face Amount** means either (i) the full stated amount claimed by the holder of such Claim or Interest in any Proof of Claim filed by the Bar Date, or otherwise deemed timely Filed under applicable law, if the proof of Claim or Interest specifies only a liquidated amount; (ii) if no Proof of Claim is filed by the Bar Date or otherwise deemed timely filed under applicable law, the full amount of the Claim or Interest listed on the Debtor's Schedules, *provided that* such amount is not listed as disputed, contingent or unliquidated; or (iii) the amount of the Claim or Interest estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code or established by the Liquidating Trustee (with respect to Partners) following the Effective Date, if no Proof of Claim or Interest has been Filed by the Bar Date or has otherwise been deemed timely filed under applicable law or if the Proof of Claim or Interest specifies an unliquidated amount.

**Fairfield Claimants** means the General Partner and Fairfield Greenwich Advisors, LLC

**File, Filed, Filing or Files** means file, filed, filing or files, respectively, with the Bankruptcy Court in the Case.

**Final Order** means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction, as entered on the docket of such court, that has not been reversed or stayed, and as to which: (a) the time to appeal or petition for certiorari has expired and no timely-filed appeal or petition for certiorari is pending, or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

**General Partner** means a Holder of a general partnership Interest in the Debtor.

**General Unsecured Claim** means a Claim that is not an Administrative Expense Claim, Priority Claim, Priority Tax Claim, General Partner Claim, Management Indemnity Claim, Fairfield Claimants General Unsecured Claim, Massachusetts Interest Claim, Management Interest Claim, or Claim of the BLMIS Trustee.

**Holder** means any Entity holding a Claim or Interest, and includes the beneficial Holder of such Claim or Interest.

**Interest** means the rights afforded to the Holder of an equity interest in the Debtor.

**Limited Partner** means the Holder of a limited partnership Interest in the Debtor.

**Limited Partner Interest** means a limited partner Interest in the Debtor held by a Limited Partner. The amount of a Limited Partner Interest shall be determined based on the amount invested by a Limited Partner in the Debtor (including amounts intended as investments), less payments on account of such Interest received from the Debtor or from any other sources, without regard to amounts reported by the Debtor or its representatives as the value of such Holder's account with the Debtor.

**Liquidating Trust** means the Trust to be established on the Effective Date to receive the Liquidating Trust Assets.

**Liquidating Trustee** means the Person appointed as Trustee of the Liquidating Trust in the Confirmation Order.

**Liquidating Trust Assets** means the following property of the Estate as of the Effective Date: The Debtor's Allowed Claim against BLMIS, all remaining property of the Estate not used to pay Allowed Claims, including property used to fund the Disputed Claims or Interests Reserve if not distributed to Holders of Allowed Claims and Interests, amounts payable to the Debtor in accordance with the BLMIS Trustee Settlement Agreement, and all other property of the Estate not constituting Litigation Trust Assets; provided, however, none of the Debtor's evidentiary privileges, including, without limitation, its attorney client, work product or other privileges or immunities, including, without limitation, the protections afforded materials prepared in anticipation of litigation or for trial, shall be transferred to the Litigation Trust, the Liquidating Trust or any trust and all such privileges and immunities shall remain the property of the Reorganized Debtor.

**Liquidation Trust Certificates** means certificates representing beneficial ownership of the assets of the Liquidation Trust, which shall be issued to the Holders of Allowed Limited Partner Interests.

**Litigation Trust** means the Trust to be established on the Effective Date to receive the Litigation Trust Assets.

**Litigation Trustee** means the Person appointed as Trustee of the Litigation Trust in the Confirmation Order.

**Litigation Trust Assets** means all Causes of Action not otherwise released, assigned, or compromised as of the Effective Date and after giving effect to the BLMIS Trustee Settlement Agreement, including Avoidance Actions, and Cash in an amount determined by the

Debtor as of the Confirmation Hearing; provided, however, none of the Debtor's evidentiary privileges, including, without limitation, its attorney client, work product or other privileges or immunities, including, without limitation, the protections afforded materials prepared in anticipation of litigation or for trial, shall be transferred to the Litigation Trust, the Liquidating Trust or any trust and all such privileges and immunities shall remain the property of the Reorganized Debtor.

**Litigation Trust Certificates** means certificates representing beneficial ownership of the assets of the Litigation Trust, which shall be issued to the Liquidating Trustee.

**Local Rules** means the Local Bankruptcy Rules of the Southern District of New York, as applicable to the Case.

**Management** means entities denominated as the "Fairfield Greenwich Group", Fairfield Greenwich (Bermuda) Limited, Fairfield Greenwich Advisors, LLC, Fairfield Risk Services Limited, Fairfield Greenwich Limited, Fairfield International Managers, Inc., Walter M. Noel, Jr., Jeffrey Tucker, Andres Piedrahita, Amit Vijayvergiya and all other officers, directors, employees, shareholders, partners, alleged partners, or members of the foregoing Fairfield Greenwich entities or their relatives (as defined in 11 U.S.C. 101(45)) or the affiliates of any of the foregoing.

**Management Indemnity Claims** means contingent and unliquidated Claims for indemnification arising under the Debtor's limited partnership agreement or otherwise.

**Management Interests Claims** means Claims against or Interests in the Debtor held by any of Noel Family LLC, Fairfield Greenwich (Bermuda) Limited, Noel Family Trust, Walter and Monica Noel Foundation, Walter Noel IRA, and Walter Noel, their predecessors or successors in interest.

**Massachusetts Interests** means Massachusetts residents who were Limited Partners as of December 8, 2008.

**Massachusetts Interests Claims** means Claims arising from payments by the Fairfield Claimants to Holders of Massachusetts Interests in connection with the settlement dated as of September 8, 2009 of an administrative proceeding brought by the Massachusetts Securities Division of the Office of the Secretary of the Commonwealth of Massachusetts.

**Order** means an order or judgment of the Bankruptcy Court or court of competent jurisdiction.

**Partner** means the Holder of an Interest in the Debtor.

**Person** means any individual, partnership, corporation, trust, governmental unit, entity, or organization of any type whatsoever.

**Petition Date** means November 19, 2010, the date of Filing of the petition commencing the Case.

**Plan** means this Plan of Reorganization, as it may be amended or modified from time to time. Any appendices or supplements to the Plan are incorporated into and made a part hereof as if fully set forth herein.

**Priority Claim** means any Claim to the extent entitled to priority in payment under sections 507(a)(2)-(7) and (9) of the Bankruptcy Code.

**Priority Tax Claim** means any Claim to the extent entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

**Professionals** means entities retained by or at the expense of the Debtor pursuant to the Bankruptcy Code and whose Administrative Expense Claims must be Allowed by the Bankruptcy Court under the Bankruptcy Code prior to payment.

**Professional Fees** means all fees, costs and expenses of Professionals incurred in the Case up to and including the Confirmation Date, which fees, costs, and expenses have been Allowed by Final Order pursuant to sections 330, 331 or 503(b) of the Bankruptcy Code.

**Professional Fee Claim** means a claim for compensation or reimbursement of expenses of a Professional and requested in accordance with the provisions of sections 326, 327, 328, 330, 331, and/or 503(b) of the Bankruptcy Code.

**Professional Fee Claims Bar Date** means the date by which requests for Professional Fee Claims must be filed pursuant to Section 2.02 of this Plan.

**Pro Rata** means the proportion that the Allowed Claim or Interest in a particular Class or Classes (as the case may be) bears to the aggregate amount of all Claims or Interests (including Disputed Claims or Interests until Allowed or disallowed) in such Class or Classes (as the case may be).

**Proof of Claim** or **Proof of Interest** means a Filed Proof of Claim or Proof of Interest.

**Record Date** means the date on which Creditors and Interest Holders entitled to vote on the Plan are determined by their record ownership of Claims or Interests, which date shall be the one on which an Order approving the Disclosure Statement is Filed.

**Reorganized Debtor** means the Debtor as debtor and debtor-in-possession in the Case on and after the Effective Date.

**Retained Assets** has the meaning set forth in the BLMIS Trustee Settlement Agreement.

**Schedules** means the Schedules of Assets and Liabilities and Statements of Executory Contracts and Financial Affairs Filed by the Debtor in accordance with the Bankruptcy Rules, as may be amended.

**Service Providers** means any Person who has served as one or more of the Debtor's custodians, administrators, accountants, or auditors.

**SIPA Proceeding** means case number 08-01789 pending before the Bankruptcy Court in which BLMIS is the debtor.

**Tax Code** means the Internal Revenue Code of 1986, as amended.

**Taxes** means and includes all federal, state, county and local income, ad valorem, excise, stamp, sales, use, payroll and other taxes of any type or nature whatsoever owed by the Debtor.

**Trust** means the Liquidation Trust or the Litigation Trust, as applicable.

**Trust Agreement** means the Litigation Trust Agreement or the Liquidation Trust Agreement, as applicable.

**Trustee** means the Litigation Trustee or the Liquidation Trustee, as applicable.

**United States Trustee** means any and all representatives and employees of the Office of the United States Trustee.

**United States Trustee Fees** means amounts payable to the United States Trustee pursuant to Section 2.01 of the Plan.

**Unliquidated, Disputed or Contingent Claim** means any Claim, the amount of which is undetermined or the liability for which is not proven or is contingent, or disputed, as reflected in either the Schedules or the Proof of Claim Filed by any Creditor.

**Document References.** All references to documents shall include all addenda, exhibits and schedules attached thereto or referred to therein.

**Other Definitions.** A term used and not defined herein, but that is defined in the Bankruptcy Code, shall have the meaning set forth therein. The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. The word "including" shall mean "including, without limitation." The singular shall include the plural and vice versa unless the context otherwise requires. Capitalized terms used herein and not otherwise defined shall have the meaning set forth in the Asset Purchase Agreement.

## ARTICLE 2

## ADMINISTRATIVE AND PRIORITY TAX CLAIMS

2.01    **Administrative Expense Claims.**  Allowed Administrative Expense Claims (other than Professional Fee Claims), including United States Trustee Fees, shall be paid in full on the later of (a) the Effective Date or (b) the date when the Administrative Expense Claim becomes an Allowed Administrative Expense Claim, unless the Debtor and the Holder of an Administrative Claim agree to other treatment of such Claim.

2.02    **Professional Fee Claims.**  Each Professional employed during the Case is required to File a final application for allowance and payment of its Professional Fee Claim within forty-five (45) days after the Effective Date and to serve notice thereof on all parties entitled to such notice.  The failure to timely File any such application shall result in the Professional Fee Claim being forever barred.  A Professional Fee Claim with respect to which an application is properly Filed shall become an Allowed Administrative Claim only to the extent allowed by Final Order of the Bankruptcy Court.  Allowed Professional Fee Claims shall be paid in full.

2.03    **Professional Retainers.**  Each Professional employed during the chapter 11 Case that holds a pre-petition retainer from the Debtor ("Retainer") shall first use such Retainer to pay the outstanding balance of its Professional Fee Claim upon allowance of such claim by the Bankruptcy Court by Final Order.  Any unused portion of any Retainer not needed to satisfy a Professional Fee Claim shall be turned over to the Debtor.

2.04    **Bar Date for Administrative Expense Claims and Priority Tax Claims.** Except as provided by Order of the Bankruptcy Court, other than Professional Fee Claims, all requests for payment of Administrative Expense Claims and all Priority Tax Claims, must be Filed and served on the Debtor no later than the first Business Day before the Confirmation Hearing.  Any Entity that is required to File and serve a request for payment of an Administrative Expense Claim, or a Priority Tax Claim, and that fails to timely File and serve such request or Claim, shall be forever barred, estopped and enjoined from asserting such request or Claim against the Debtor, the Estate of the Debtor, the Trusts or their beneficiaries, or any of its or their property.  This provision shall not be construed to extend any earlier Bar Date previously set by Order of the Bankruptcy Court.

2.05    **Priority Tax Claims.**  At the option of the Debtor, each Holder of an Allowed Priority Tax Claim either (a) shall be paid the full amount of such Allowed Priority Tax Claim in Cash, on the later of (i) the Effective Date, or (ii) the first Business Day after such Claim becomes an Allowed Claim, or (b) shall be paid the full amount of such Allowed Priority Tax Claim in equal quarterly installments with interest at the rate required by applicable law beginning on the Effective Date and ending on the date which is six (6) years after assessment of such Priority Tax Claim.

## ARTICLE 3

## CLASSIFICATION OF CLAIMS AND INTERESTS

This Plan classifies the Claims against and Interests in the Debtor as follows:

A.      Class 1 -  Priority Claims.

B.      Class 2 - General Unsecured Claims.

C.      Class 3 - BLMIS Trustee Claim.

E.      Class 4 - Limited Partner Interests.

F.      Class 5 - General Partners' Claims and Interests, Management Indemnity Claims, Fairfield Claimants General Unsecured Claims, Massachusetts Interests Claims, and Management Interests Claims.

**Classification Rules.**  A Claim is in a particular Class only to the extent that the Claim qualifies within the description of Claims of that Class, and such Claim is in a different Class to the extent that the remainder of the Claim qualifies within the description of the different Class.  Pursuant to section 1123(a)(4) of the Bankruptcy Code, all Allowed Claims of a

particular Class shall receive the same treatment unless the Holder of a particular Allowed Claim agrees to a less favorable treatment for such Allowed Claim. For purposes of the Plan, and pursuant to section 510(a) of the Bankruptcy Code, the Plan shall give effect to subordination agreements which are enforceable under applicable nonbankruptcy law, except to the extent the beneficiary or beneficiaries thereof agree to less favorable treatment. The Plan shall also give effect to the subordination rules of sections 510(b) and (c) of the Bankruptcy Code. The inclusion of a Creditor by name in any Class is for purposes of general description only, and includes all entities claiming as beneficial interest holders, assignees, heirs, devisees, transferees or successors in interest of any kind of the Creditor named.

## ARTICLE 4

## TREATMENT OF CLASSES UNDER THE PLAN

4.01    Each Member of a Class of Claims or Interests shall receive the following in full and complete exchange, satisfaction, settlement, payment and discharge of all of their Claims against and Interests in the Debtor.

A.    Class 1 – Allowed Priority Claims shall be paid the full Allowed amount of such Priority Claim in Cash on the later of the Effective Date or entry of a Final Order allowing such Claim.

B.    Class 2 – Allowed General Unsecured Claims shall be paid the full Allowed amount of such Claim in Cash as soon after the Effective Date as is practicable. This Class is not impaired.

C.    Class 3 – The Allowed BLMIS Trustee Claim shall receive the consideration due on account of such Claim pursuant to the terms and conditions of the BLMIS Trustee Settlement. This Class is impaired.

E.    Class 4 – Each Allowed Limited Partner Interest shall receive its pro rata share of Litigation Trust Certificates and Liquidating Trust Certificates, in full settlement and satisfaction of such Interests. This Class is impaired.

F.    Class 5 – Holders of General Partners' Claims and Interests, Management Indemnity Claims, Fairfield Claimants General Unsecured Claims, Massachusetts Interests Claims, and Management Interests Claims shall not receive or retain anything of value under this Plan, but shall retain any and all such claims and may assert any and all such claims and rights by way of set-off, defense, counterclaim or recoupment with respect to any claim or claims filed or asserted against any one or more of them by the BLMIS Trustee, including without limitation the Claims Against Management. This Class is impaired.

4.02    **Controversy Concerning Impairment.**  In the event of a controversy as to whether any Creditor or Holder of an Interest or Class of Creditors or Class of Holders of Interests is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

# ARTICLE 5

## ACCEPTANCE OR REJECTION OF THE PLAN

5.01 **Voting of Claims and Interests.** Each Holder of an Allowed Claim in Class 3 and 4, shall be entitled to vote to accept or reject this Plan as provided for in the order entered by the Bankruptcy Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject this Plan (a copy of which was distributed together with the Disclosure Statement). For purposes of calculating the number of Allowed Claims in a Class of Claims that have voted to accept or reject this Plan under section 1126(c) of the Bankruptcy Code, all Allowed Claims in such Class held by one entity or any Affiliate thereof shall be aggregated and treated as one Allowed Claim in such Class.

5.02 **Impaired Classes.** Classes 3, 4, and 5 are impaired under the Plan. Each impaired Holder of an Allowed Claim in Classes 3 and 4 shall be entitled to vote to accept or reject the Plan. Class 5 is deemed to reject the Plan.

5.03 **Acceptance by an Impaired Class of Claims and Interests.** Consistent with section 1126(c) of the Bankruptcy Code, and except as provided for in section 1126(e) of the Bankruptcy Code, a Class of Creditors shall have accepted the Plan if Creditors holding at least two-thirds (⅔) in the aggregate dollar amount and more than one-half (½) in number of the Allowed Claims of such Class that have accepted or rejected the Plan vote to accept the Plan. A Class of Interests shall be deemed to have accepted the Plan if Partners holding at least two thirds (2/3) in amount of the Allowed Interests of such Class that have accepted or rejected the Plan vote to accept the Plan.

5.04 **Presumed Acceptance of Plan by Unimpaired Classes.** Classes 1 and 2 are unimpaired under the Plan and, therefore, are conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.

5.05 **Cramdown**. The Debtor shall utilize the "cramdown" provisions of section 1129(b) of the Bankruptcy Code to satisfy the requirements of confirmation of this Plan over the rejection of any Class of Claims or Interests which may reject this Plan.

# ARTICLE 6

## MEANS FOR IMPLEMENTATION OF THE PLAN

6.01 **BLMIS Trustee Settlement.** On the Effective Date, the Debtor and the BLMIS Trustee shall consummate the BLMIS Trustee Settlement, the terms of which are incorporated herein by reference. The Assigned Management Claims shall be absolutely and irrevocably transferred to the BLMIS Trustee and all other actions contemplated by the BLMIS Trustee Settlement Agreement shall be taken and performed. The Debtor's rights and obligations under the BLMIS Trustee Settlement with respect to Litigation Trust Assets shall be assigned, transferred and conveyed to the Litigation Trust as of the Effective Date, and the Litigation Trust shall perform all of the duties and responsibilities of the Debtor under the BLMIS Trustee Settlement Agreement from and after the Effective Date with respect to Litigation Trust Assets. The Debtor's rights and obligations under the BLMIS Trustee Settlement with respect to Liquidation Trust Assets shall be assigned, transferred and conveyed

to the Liquidation Trust as of the Effective Date, and the Liquidation Trust shall perform all of the duties and responsibilities of the Debtor under the BLMIS Trustee Settlement Agreement from and after the Effective Date with respect to Liquidation Trust Assets. The Trusts shall have no liability for Claims against or Interests in the Debtor other than as expressly provided in this Plan with respect to the assumption of the Debtor's obligations under the BLMIS Trustee Settlement.

6.02 **Payment of Claims.** On the Effective Date, the Reorganized Debtor shall pay or deposit in the Disputed Claims Reserve Cash in amounts necessary to pay estimated Administrative Expenses, Priority Claims, and Claims in Classes 1 and 2 in accordance with the terms of this Plan.

6.02 **Liquidating Trust.** On the Effective Date, the Reorganized Debtor and the Liquidating Trustee shall execute the Liquidating Trust Agreement and the Reorganized Debtor shall transfer, convey and assign the Liquidating Trust Assets to the Liquidating Trustee. The Liquidating Trustee shall distribute Liquidating Trust Certificates pro rata to Holders of Allowed Limited Partner Interests.

6.03 **Litigation Trust.** On the Effective Date, the Reorganized Debtor and the Litigation Trustee shall execute the Litigation Trust Agreement and the Reorganized Debtor shall transfer, convey and assign the Litigation Trust Assets to the Litigation Trustee. The Litigation Trustee shall distribute all Litigation Trust Certificates to the Liquidating Trustee, who shall be the sole initial Holder of Litigation Trust Certificates. The Litigation Trustee shall be deemed a representative of the Estate for purpose of prosecutions of any Cause of Action transferred to the Litigation Trust, in accordance with Section 1123(b)(3)(B) of the Bankruptcy Code.

6.04 **Dissolution of the Debtor.** The Reorganized Debtor shall be dissolved by the General Partner as soon as practicable after the Effective Date.

6.05 **Derivative Action.** On the Effective Date, the Litigation Trustee shall be substituted on behalf of the Reorganized Debtor in the Derivative Action, and shall be realigned as a plaintiff in such action, to prosecute only those Causes of Action which are Retained Assets, and may prosecute, settle, or litigate to judgment the Causes of Action asserted in the Derivative Action for the benefit of the Litigation Trust. For the avoidance of doubt, on the Effective Date, the stay of the Derivative Action provided under the Interim Consent Order Staying Certain Derivative Actions Pending in the Supreme Court of the State of New York [Docket No. 46] signed on January 3, 2011 in the above-captioned matter will be lifted.

6.06 **Duties of Litigation Trustee and Liquidation Trustee.** Each of the Litigation Trustee and Liquidation Trustee shall cooperate with the other in the discharge of their respective duties in order to maximize the value of each Trust's assets. The Trustees shall make information available to each other on reasonable request. Unless otherwise provided in this Plan or the Trust Agreements, all objections to Claims or Interests after the Effective Date shall be prosecuted by the Liquidating Trustee. The Debtor's books and records after the Effective Date shall be maintained by the Liquidating Trustee, who shall allow the General Partner access to such records on reasonable request.

## ARTICLE 7

## CONDITIONS PRECEDENT

7.01 **Conditions Precedent to Confirmation Date.** The occurrence of the Confirmation Date of the Plan is subject to satisfaction or waiver of each of the following conditions:

(a) The Bankruptcy Court has entered the Confirmation Order in form and substance reasonably satisfactory to the Debtor and the BLMIS Trustee.

(b) The Debtor has received the consent of any governmental units whose consent is required for confirmation.

7.02 **Conditions to Effective Date.** Each of the following shall be an independent condition to the Effective Date of the Plan:

(a) The Confirmation Order shall have been entered and shall have become a Final Order.

(b) All actions, documents, and agreements necessary to implement the Plan, and the transactions contemplated thereby shall have been effected or executed, except to the extent waived in writing.

7.03 **Effective Date.** On the Effective Date all Persons shall make payments, execute releases, and perform any other duty required by the Plan.

7.04 **Waiver of Conditions.** The Debtor, with the reasonable consent of the BLMIS Trustee, shall have the right to waive any of the foregoing conditions to the Effective Date, other than entry of the Confirmation Order, and the Effective Date may occur notwithstanding the pendency of an appeal of the Confirmation Order or any order related thereto so long as there is no stay in effect. The Effective Date may occur before the expiration of time to take an appeal or to seek reconsideration of the Confirmation Order without the giving of any notice to any objecting party. In the event of any such appeal, the Reorganized Debtor may seek the dismissal of such appeal as moot following the Effective Date of the Plan.

## ARTICLE 8

## DISTRIBUTIONS UNDER THE PLAN

8.01 **Distributions.** All distributions and transfers to be made pursuant to the Plan shall be made by the Debtor, who shall be the Disbursing Agent under the Plan.

8.02 **Mailing of Distributions**. All Distributions shall be made to the Holder of a Claim at the address listed on its proof of claim or request for payment filed with the Bankruptcy Court or, if no proof of claim or request for payment was filed, at the address listed by the Debtor on the Schedules or at its last known address. If Distributions are returned due to

an incorrect, incomplete or out of date address, the Disbursing Agent, in its sole discretion, shall take those steps reasonable and appropriate to ascertain the correct address.

8.03    **Timing of Distributions.**

(a)    **Generally**.  Distributions shall be made on the Effective Date or as soon thereafter as practicable, unless otherwise provided in this Plan or otherwise agreed by the Disbursing Agent and the Claimant.

(b)    Any Cash held by the Estate after full satisfaction of all Allowed Claims shall be transferred to the Liquidating Trust.

8.04    **Method of Payment.**  Any Cash payment made by the Disbursing Agent pursuant to the Plan, shall be in U.S. dollars, either by check drawn on a domestic bank or wire transfer therefrom.

8.05    **Timing of Payment.**  Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be due on the next succeeding Business Day.

8.06    **Setoff.**  Nothing contained herein shall be deemed to waive the Debtor's statutory or common law right of setoff arising prior to the Petition Date.

8.07    *De Minimis* **Cash Distributions.**  The Disbursing Agent shall not be required to distribute Cash to any Creditor if the amount of Cash to be distributed to such Creditor is less than $10.00.

8.08    **Unclaimed Distributions.**  If the Holder of an Allowed General Unsecured Claim fails to present for payment a check issued to such Holder by the Disbursing Agent within ninety (90) days of the date such check was issued, or if ninety (90) days or more after the Effective Date, any distributions of Cash are returned due to an incorrect or incomplete address for which the Debtor has not received a correct address, then the property attributable to such check or distribution shall be deemed to be unclaimed distributions in respect of such Holder's Claim and the payee of such check or distribution shall be deemed to have no further Claim or right to receive such check or distribution, and shall not be entitled to participate in any further distributions under the Plan.  All unclaimed distributions shall be transferred to the Liquidating Trust.

8.09    **Rounding.**  Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent, with one-half cent being rounded up to the nearest whole cent. To the extent Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as unclaimed distributions.

8.10    **Treatment of Disputed Claims and Interests.**  Disputed Claims and Interests shall be treated as follows under the Plan:

(a)    **Objections to Claims and Interests.**  Except as otherwise provided by the Bankruptcy Court or in the Plan, all objections to Claims or Interests shall be

brought by the Debtor, the Liquidating Trustee, or the Litigation Trustee, and served on the Holders of such Claims on or before the later of (i) sixty (60) days after the Confirmation Date, (ii) sixty (60) days after a particular Proof of Claim or Interest is Filed, and (iii) such additional date as the Bankruptcy Court may fix upon application of the Debtor or the Liquidating Trustee, or the Litigation Trustee, provided, however, that no party in interest shall be required to File an objection to any Claim or Interest listed in the Schedules as an Unliquidated, Disputed, or Contingent Claim or Interest, and for which no Proof of Claim or Interest was Filed, which Claim or Interest shall be barred and disallowed in its entirety. The Bankruptcy Court shall retain jurisdiction to determine the Allowance of any Claim or Interest as to which a timely objection has been Filed.

       (b)    **No Distributions Pending Allowance.**  Notwithstanding any other provision of the Plan to the contrary, no distribution shall be made to the Holder of a Disputed Claim or Interest or to the Holder of a Claim or Interest who is the subject of a proceeding against it by the Debtor, Liquidating Trustee or Litigation Trustee, unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest.

       (c)    **Distributions After Allowance.**  Once a Disputed Claim becomes an Allowed Claim, distribution on account of such Claim shall be made in accordance with the provisions of the Plan governing the Class of Claims to which the respective Claim belongs.

       8.11    **Estimation of Claims.**  At any time prior to the Effective Date, or within thirty (30) days thereafter, the Debtor may seek the estimation of a Disputed Claim or Interest in accordance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules. The estimated amount of a Disputed Claim or Interest shall be fixed by Final Order, which shall be deemed the amount of such Claim for all purposes under the Plan.

       8.12    **Disallowance of Claims Without Further Order of the Court**.  Any Claim or Interest that is scheduled as disputed, contingent and/or unliquidated in amount, and for which a proof of claim has not been timely Filed by the Claimant or Interest Holder, shall be deemed disallowed and expunged, without further act or deed. Except as provided in Section 9.01 (d), any Claim or Interest that is Filed after the Bar Date shall be deemed disallowed and expunged without further act or deed, unless a prior Order of the Court has authorized such late filing.

       8.13    The Disbursing Agent may, but shall not be obligated to, deduct any federal, state or local withholding taxes from any payments made under this Plan with respect to Allowed Claims or Allowed Interests.

       8.14    Certificates in the Liquidating Trust shall be distributed to Holders of Allowed Limited Partner Interests in accordance with the relevant Trust Agreement. Certificates in the Litigation Trust shall be distributed to the Liquidating Trustee. All Trust Certificates shall be freely transferable, subject to compliance with transfer requirements established by the Trustees in accordance with the relevant Trust Agreements.

## ARTICLE 9

## EXECUTORY CONTRACTS

9.01    **Assumption or Rejection of Executory Contracts and Unexpired Leases.**

(a)    **Executory Contracts.** All executory contracts that exist between any Debtor and any Entity that have not been assumed or rejected prior to the Effective Date, shall be deemed rejected as of the Effective Date, except for any executory contract which is subject to a pending application to assume or reject or extend time to assume or reject. Nothing contained herein shall constitute a waiver of any claim, right or cause of action that the Debtor may hold against any party to any executory contract with the Debtor, including the insurer under any policy of insurance.

(b)    **Unexpired Leases.** All unexpired leases that exist between the Debtor and any Entity which have not been assumed or rejected prior to the Effective Date, shall be deemed rejected as of the Effective Date, except for any unexpired lease which is subject to a pending application to assume or reject or extend time to assume or reject. Nothing contained herein shall constitute a waiver of any claim, right or cause of action that the Debtor may hold against any lessor or lessee.

(c)    **Approval of Assumption or Rejection of Leases and Contracts.** Entry of the Confirmation Order shall constitute the approval, pursuant to section 365(a) of the Bankruptcy Code, of the assumption or rejection of the executory contracts and unexpired leases to be assumed or rejected pursuant to the Plan.

(d)    **Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.** Any and all Proofs of Claim arising out of the rejection of an executory contract or unexpired lease pursuant to this Article 9 must be Filed within thirty (30) days after the later of the Confirmation Date or, if the contract or lease is not automatically rejected by virtue of the Confirmation Order, the date the Bankruptcy Court enters an order approving such rejection. Any Holder of a Claim arising out of the rejection of an executory contract or unexpired lease who fails to File a Proof of Claim within such time shall be forever barred, estopped and enjoined from asserting such Claim against the Debtor, or its Estate. Unless otherwise ordered by the Bankruptcy Court, all Claims arising from the rejection of executory contracts and unexpired leases shall be treated as General Unsecured Claims under the Plan. Nothing contained herein shall extend the time for Filing a Proof of Claim for rejection of any contract or lease rejected prior to the Confirmation Date.

## ARTICLE 10

## EFFECTS OF PLAN UPON CONFIRMATION

10.01    **No Preclusive Effect.** After giving effect to the BLMIS Trustee Settlement Agreement, all Avoidance Actions and Causes of Action of the Debtor and the Estate shall be expressly preserved by this Plan, and nothing contained in this Plan, the Confirmation Order, or the Disclosure Statement shall have the effect of barring, releasing, prejudicing,

impacting or waiving any of those rights or claims under the doctrines of res judicata, collateral estoppel, equitable estoppel, judicial estoppel, or any other legal or equitable doctrines of preclusive effect, except to the extent that such claims may be expressly released or assigned in this Plan.

10.02 **Retention of Jurisdiction; Broad Retention.** Notwithstanding entry of the Confirmation Order, the occurrence of the Effective Date or consummation of the Plan, the Bankruptcy Court shall retain jurisdiction post-confirmation to the full extent that it is legally permissible, including all jurisdiction necessary to ensure that the provisions of the Plan are carried out. The Bankruptcy Court shall also retain jurisdiction post-confirmation for the following specific purposes:

(a) to adjudicate all controversies concerning the classification of, value of, or allowance or estimation of any Claims or Interests;

(b) to liquidate, allow or disallow any Claims which are disputed, contingent or unliquidated;

(c) to determine any and all objections to the allowance of Claims or Interests, or counterclaims to any Claim;

(d) to determine any and all applications for allowance of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan;

(e) to determine any applications pending on the Effective Date for the rejection or assumption of executory contracts or unexpired leases or for the assumption and assignment, as the case may be, of executory contracts or unexpired leases to which the Debtor is a party or with respect to which it may be liable, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom;

(f) to adjudicate any actions brought on any Avoidance Actions, at any time prior to expiration of the relevant statute of limitations;

(g) to determine any and all applications, adversary proceedings and contested or litigated matters that may be pending, including without limitation, litigation of insurance claims;

(h) to consider any modifications of the Plan, remedy any ambiguity, defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order, to the extent authorized by the Bankruptcy Court;

(i) to determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan;

(j) to consider and act on the compromise and settlement of any Claim or cause of action by or against the Estate;

(k) to issue orders in aid of execution of the Plan to the extent authorized by section 1142 of the Bankruptcy Code;

(1)     to determine such other matters as may be set forth in the Confirmation Order or which may arise in connection with the Plan or the Confirmation Order;

(m)     to enforce the releases and injunctions set forth in this Plan; or

(n)     to enforce the BLMIS Trustee Settlement Agreement.

10.03   **Effectuating Documents; Further Transactions; Timing.**  The Debtor is authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. All transactions that are required to occur on the Effective Date under the terms of the Plan shall be deemed to have occurred simultaneously.

10.04   **RELEASES, EXCULPATION AND INJUNCTIONS.**

10.04.1   **Exculpation.**  Pursuant to this Plan and the Confirmation Order, none of the Debtor, members of Management or their Affiliates, the Debtor's Affiliates, the BLMIS Trustee, or the professionals retained by any of the foregoing, or any of their respective officers, employees, shareholders, directors, agents, partners, alleged partners or Affiliates as of the Effective Date, shall have any liability to any Creditor, Interest Holder, or other Person for any act or omission in connection with or arising out of the administration of the chapter 11 Case, including, without limitation, the filing of the Case, the prosecution of the Case, the negotiation, preparation and pursuit of approval of the BLMIS Trustee Settlement or confirmation of the Plan, or the approval of the BLMIS Trustee Settlement or the confirmation of the Plan, the consummation of the BLMIS Trustee Settlement or the Plan, the administration of the Plan or the property to be distributed under the Plan, except for any such liability based on willful misconduct of such parties as determined by Final Order of the Bankruptcy Court.

10.04.2   **Release of Claims Against Co-Debtor**.  Pursuant to this Plan and the Confirmation Order, to the extent that the Debtor holds any Claims and/or Causes of Action against Greenwich Sentry Partners, L.P., the debtor and debtor-in-possession of the case under chapter 11 of the Bankruptcy Code, case number 10-16230, jointly administered under the Debtor's Case, the Debtor releases and waives any and all such Claims and Causes of Action and any and all such Claims and Causes of Action are extinguished as of the Effective Date.

10.04.3   **Permanent Injunction.  PURSUANT TO THIS PLAN AND THE CONFIRMATION ORDER, EXCEPT AS EXPRESSLY PROVIDED IN THE PLAN, AT ALL TIMES ON AND AFTER THE EFFECTIVE DATE, ALL PERSONS WHO HAVE BEEN, ARE, OR MAY BE HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTOR ARISING PRIOR TO THE EFFECTIVE DATE, SHALL BE ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS WITH RESPECT TO SUCH CLAIMS OR INTERESTS (OTHER THAN ACTIONS BROUGHT TO ENFORCE ANY RIGHTS OR OBLIGATIONS UNDER THE PLAN OR THE BLMIS TRUSTEE SETTLEMENT AGREEMENT):**

(a)     **COMMENCING, CONDUCTING OR CONTINUING IN ANY MANNER, DIRECTLY OR INDIRECTLY ANY SUIT, ACTION, OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTOR OR THE ESTATE, INCLUDING, WITHOUT LIMITATION, ALL SUITS, ACTIONS, AND PROCEEDINGS THAT ARE**

PENDING AS OF THE EFFECTIVE DATE, WHICH SHALL BE WITHDRAWN OR DISMISSED WITH PREJUDICE BASED UPON OR ARISING FROM THEIR CLAIMS AGAINST THE DEBTOR;

(b) ENFORCING, LEVYING, ATTACHING, COLLECTING, OR OTHERWISE RECOVERING BY ANY MANNER OR MEANS WHETHER DIRECTLY OR INDIRECTLY ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTOR OR THE ESTATE;

(c) CREATING, PERFECTING, OR OTHERWISE ENFORCING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY LIEN AGAINST THE DEBTOR OR THE ESTATE;

(d) ASSERTING ANY RIGHT OF SUBROGATION, SETOFF OR RECOUPMENT OF ANY KIND, DIRECTLY OR INDIRECTLY AGAINST ANY OBLIGATION DUE THE DEBTOR, OR THE ESTATE;

(e) ASSERTING, PROSECUTING, COMMENCING OR CONTINUING ANY CLAIMS AGAINST MANAGEMENT OR OTHER CLAIMS AGAINST MANAGEMENT ARISING FROM RELATED FACTS AND CIRCUMSTANCES THAT THE DEBTOR OWNS OR HOLDS, AND IS ASSIGNING TO THE BLMIS TRUSTEE UNDER THE BLMIS TRUSTEE SETTLEMENT AGREEMENT, WHETHER OR NOT SUCH CLAIMS HAVE BEEN ASSERTED BY OR ON BEHALF OF THE DEBTOR OR THE BLMIS TRUSTEE AGAINST MANAGEMENT, INCLUDING WITHOUT LIMITATION THE CLAIMS ASSERTED IN *FERBER V. FAIRFIELD GREENWICH GROUP ET AL.*, INDEX NO. 600469/2009 (N.Y. SUP. CT. 2009); OR

(f) PROCEEDING IN ANY MANNER IN ANY PLACE WHATSOEVER THAT DOES NOT CONFORM TO OR COMPLY WITH THE PROVISIONS OF THE PLAN.

## ARTICLE 11

## MISCELLANEOUS PROVISIONS

11.01 **Exemption from Transfer Taxes.** Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of securities or other property under the Plan; the creation, transfer, filing, cancellation or recording of any mortgage, deed of trust, financing statement or other security interest; or the making, delivery, filing or recording of any deed, bill of sale, assignment or other instrument of transfer under, in furtherance of or in connection with the Plan, shall not be subject to any stamp tax, real estate tax, conveyance, filing or transfer fees, mortgage, recording or other similar tax or other government assessment. All recording officers and other entities whose duties include recordation of documents lodged for recording shall record, file and accept such documents delivered under the Plan without the imposition of any such charge, fee, governmental assessment or tax.

11.02 **Modification of the Plan.** The Debtor reserves the right, subject to the reasonable approval of the BLMIS Trustee, in accordance with the Bankruptcy Code, to amend or modify the Plan and related documents in any manner prior to the entry of the Confirmation

Order.  After entry of the Confirmation Order, the Debtor may, upon order of the Bankruptcy Court and subject to the reasonable approval of the BLMIS Trustee, amend or modify the Plan and related documents in accordance with, and to the extent permitted by, section 1127 of the Bankruptcy Code, and remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.  Every amendment or modification of the Plan shall supersede and render null and void all prior versions of the Plan.

       11.03  **No Corporate Action Required.**  The consummation of this Plan, the adoption, execution, delivery and implementation of all contracts, documents, instruments, and other agreements related to or contemplated by this Plan, and the other matters provided for, under or in furtherance of the Plan involving action to be taken by or required of the Debtor shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without further order of the Bankruptcy Court or any requirement of action by shareholders, officers or directors of the Debtor.  No corporate action of the Debtor shall be required for the actions to be taken by the Debtor under this Plan to be effective.  Any corporate officer of the Debtor may sign any document or instrument to be executed and delivered by the Debtor pursuant to this Plan, and in the absence of any such officer, the Bankruptcy Court shall designate a representative of the Debtor for such purpose.

       11.04  **Revocation or Withdrawal of the Plan.**  The Debtor reserves the right, subject to the reasonable approval of the BLMIS Trustee, to revoke or withdraw the Plan at any time prior to the Effective Date.  If the Debtor revokes or withdraws the Plan, then the Plan shall be deemed null and void.  If the Debtor revokes or withdraws the Plan, then nothing contained herein shall be deemed an admission.

       11.05  **Binding Effect.**  The Plan binds each of the Holders of Claims and Interests to the terms and conditions of the Plan, whether or not such Creditor or Interest Holder has accepted the Plan.

       11.06  **Construction.**  The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to construction of the Plan.

       11.07  **Time.**  In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein, the provisions of Bankruptcy Rule 9006 shall apply.

       11.08  **Headings.**  The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor are intended in any manner to affect any interpretation of the provisions of the Plan.

       11.09  **Governing Law.**  Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations of any Entity arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York, without regard to New York choice of law provisions.

       11.10  **Benefit Programs.**  As of the Confirmation Date, all programs or plans maintained by the Debtor for the benefit of present or former employees and dated on or before the Confirmation Date, which have not been previously terminated shall be terminated.  Any Entity with a Claim arising from such termination shall be treated as a Holder of a General

Unsecured Claim.  No termination of any such benefit programs or plans shall adversely affect or diminish any Causes of Action.

11.11 **Retiree Benefits.**  Except as otherwise provided in the Plan, and except to the extent any obligations have been sooner terminated, any obligations of the Debtor to any Entity for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the Debtor prior to the Effective Date, if any, shall be terminated as of the Effective Date.

11.12 **Payment of Statutory Fees.**  No later than the Effective Date, the Debtor shall have paid all fees due to the United States Trustee through the Effective Date.  Such fees which accrue after the Effective Date and until the Case is closed shall be payable by the Disbursing Agent.

11.13 **Execution of Plan Documents.**  Upon application by the Debtor and/or the Reorganized Debtor, the Court may issue an order directing any necessary party to execute, deliver, or to join in the execution or delivery of an instrument or document, and to perform any act necessary for the consummation of this Plan.

11.14 **Closing of Case.**  On application of the Debtor, the case shall be closed. Closing of the Case shall not affect the pendency of any adversary proceeding or contested matter filed before the Case is closed.  Closing of the Case shall terminate the Estate's obligation to pay fees to the United States Trustee.

11.15 **Term of Injunction or Stays.**  The injunctive provisions of this Plan are permanent and shall not be affected by closing of the Case.

11.16 **Successors and Assigns.**  The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding upon and shall inure to the benefit of the heirs, executors, administrators, successors or assignees of such Person.

11.17 **Classes**.  Any Class of Claims that does not contain as an element thereof an Allowed Claim or a claim temporarily Allowed under Bankruptcy Rule 3018 as of the date of the commencement of the Confirmation Hearing shall be deemed deleted from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class under section 1129(a)(d) of the Bankruptcy Code.

11.18  **Cramdown**.  If any impaired Class fails to accept the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtor reserves the right to request the Bankruptcy Court to confirm the Plan in accordance with the provisions of section 1129(b) of the Bankruptcy Code.

Dated:  July 20, 2011
      New York, New York

          GREENWICH SENTRY, L.P.

          By:_____/s/Jeffrey Tucker_____
             Name:   /s/Jeffrey Tucker
             Title:  Director of Fairfield Greenwich (Bermuda), Ltd.,
                    General Partner of Greenwich Sentry, L.P.